IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs November 1, 2011

**STATE OF TENNESSEE v. GREGORY O. CHERRY**

**Appeal from the Circuit Court for Hardin County**
**No. 8429     C. Creed McGinley, Judge**

**No. W2010-02577-CCA-R3-CD  - Filed August 2, 2012**

The defendant, Gregory O. Cherry, was indicted for possession of .5 grams or more of cocaine with intent to manufacture, deliver, or sell; sale of less than .5 grams of cocaine; delivery of less than .5 grams of cocaine; and possession of drug paraphernalia.  After the denial of a motion to suppress, he was convicted by a jury of possession of .5 grams or more of cocaine with intent to sell, delivery of less than .5 grams of cocaine, and possession of drug paraphernalia and sentenced to an effective sentence of eight years, to be served consecutively to two other sentences.  This court dismissed the notice of appeal because it was filed before the trial court issued a final order from which to appeal.  *See State v. Gregory O. Cherry*, No. W2006-00015-CCA-R3-CD, 2007 WL 2155740, at *1 (Tenn. Crim. App. July 27, 2007).  The defendant then filed a "Petition for Delayed Motion for New Trial," which the trial court denied, and this appeal followed.  On appeal, he challenges: (1) the denial of the motion to suppress his statement and the evidence obtained by a warrantless search of his vehicle; and (2) the sufficiency of the evidence.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Vance W. Dennis, Savannah, Tennessee, for the appellant, Gregory O. Cherry.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Hansel McCadams, District Attorney General; and Ed N. McDaniel, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## FACTS

At trial, Agent Joe Lambert of the 24th Judicial Drug Task Force testified that he utilized a confidential informant to buy cocaine from the defendant in October 2004. The informant was paid $100 to make the buy. According to Agent Lambert, the informant tried to contact the defendant at his residence. The defendant was not home at the time, so the informant called the defendant and arranged to meet him at a Walmart parking lot.

When Agent Lambert and the informant arrived at the proscribed location, the defendant was in a "little red vehicle." Agent Lambert parked a few spaces away from the defendant, and the informant got out of the car and got into the defendant's car. A few minutes later, the informant brought some crack cocaine back to Agent Lambert. The defendant was arrested at the scene, and the vehicle was seized. The entire episode was observed by members of the drug task force and the audio of the event was recorded through a body wire.

The confidential informant testified that he was, at the time of his testimony, confined at the Hardin County Jail as the result of his being charged with aggravated assault. He testified that he had earlier contacted the drug task force in Savannah because the mother of his child "got hooked on crack real bad," and he wanted "to help out and get rid of it." On the day of the defendant's arrest, the informant met with members of the task force after he had earlier called the defendant on his cell phone to arrange to purchase narcotics. At the scene, he got into the defendant's car, purchased crack cocaine from him with money supplied by the drug task force, and then returned to his home.

A search of the defendant's vehicle made after the arrest revealed more cocaine in a bag in the headliner of the vehicle and the money that was used by the confidential informant to make the purchase. Later that same day, the defendant's home was searched which resulted in the seizure of more cocaine found on a dresser in a back bedroom. Also found in the bedroom were a set of scales containing cocaine residue and a wood-carving knife with "residue from cutting up the crack cocaine to weigh it on [the] scales."

After his arrest, the defendant gave a statement to the police in which he said, "On 10/28/04, I did sell crack cocaine to an undercover officer at old Wal-Mart parking lot. The residence at 95 Union Camp is my residence, and drugs found inside [were] mine."

The Tennessee Bureau of Investigation ("TBI") tested the substances seized in the case herein. The samples contained .2 grams of cocaine, 2.6 grams of cocaine, and 7.8 grams of cocaine.

The defendant called Julie Replogle to testify on his behalf. She had been living with the defendant for a couple of months and never saw any drugs being used in or sold out of the house. On the day of the defendant's arrest, Ms. Replogle received a telephone call from the informant's girlfriend and was told, according to her testimony, that the informant was going to try to set the defendant up on a drug sale.

The defendant testified that he had heard of the informant but had never "really seen him face to face until the day he called." The defendant said the informant called and told him that he needed to talk to him. The defendant eventually agreed to meet the informant "somewhere public," at Auto Zone, "because [he had] to go pick up a part for [his] boat." When the defendant arrived, the informant "jump[ed]" in his car and asked for drugs. The defendant told him that he did not "do that" and that "he needed to go." At that point, the informant got out of the vehicle and slammed the door "with an attitude." The defendant denied giving the informant any drugs or money.

When asked about his statement and the drugs found in his vehicle, the defendant claimed that an officer threatened to pick up his girlfriend, his car, and any money he had in the bank if he did not comply. The defendant testified that his attorney advised him to write the statement to keep his girlfriend from being arrested and to keep the police from taking his property. The defendant said he wrote the statement "word for word as [the] [o]fficer . . . told [him] to." The defendant denied having any drugs in his house and claimed he had no idea where they came from.

## ANALYSIS

### I. Motion to Suppress

The defendant contends that the trial court erred by denying his motion to suppress his statement given to Sergeant Kelley "because the threats of prosecution of the [defendant's] girlfriend made by [Sergeant] Kelley rendered the confession involuntary." The defendant also argues that the trial court erred in failing to suppress the evidence obtained from a warrantless search of his vehicle. The State responds that the defendant did not include in the record either the transcript of the suppression hearing or any facts or circumstances surrounding the statement and has therefore waived consideration of this issue on appeal.

The defendant initially filed a notice of appeal in January 2006. That appeal was dismissed because the record did not include an order disposing of the motion for new trial. *Gregory O. Cherry*, 2007 WL 2155740, at *1. The trial court then entered an order denying the motion for new trial. The defendant filed another notice of appeal and raised the same

issues that he raised in his previous appeal. The State filed a motion to dismiss for failure of the defendant to include a copy of the transcript of the trial. This court issued an order on August 1, 2011, denying the State's motion to dismiss. In that order, we found that the transcript of the defendant's trial was included in the first appeal and that this court can take judicial notice of its own records. The order stated: "This Court shall take judicial notice of the record in appeal number W200[6]-00015-CCA-R3-CD, as deemed necessary."

However, even taking judicial notice of the record from the prior appeal, we have been unable to locate a transcript of any hearing on the motions to suppress or any orders disposing of these motions. Further, the argument section of the defendant's brief on the suppression issue consists of several conclusory sentences that are unsupported by any citation to the record. A defendant who fails to make an argument on an issue or appropriate citations to the record waives the issue on appellate review. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). The defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

The defendant next argues that the evidence was insufficient to support his convictions. Again, the entire argument section of the defendant's brief on this issue consists of one conclusory statement: "Based upon the testimony of the witnesses in this case, it is the [defendant's] position that no reasonable trier of fact could have found him guilty of the charged offenses by a reasonable doubt." The State claims that the defendant has again waived this claim due to his failure to provide any argument concerning why the evidence was insufficient. *See* Tenn. Ct. Crim. App. R. 10(b). The State insists that waiver notwithstanding, the record supports the convictions.

We agree that the one statement comprising the entire argument section of the defendant's brief is insufficient and would ordinarily result in a waiver of this issue on appeal. However, despite the waiver of the issue, we will address the sufficiency of the convicting evidence in the interests of judicial economy. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant herein was convicted of possession of .5 grams or more of cocaine with intent to sell, delivery of less than .5 grams of cocaine, and possession of drug paraphernalia. Pursuant to Tennessee Code Annotated section 39-17-417, it is a criminal offense for a person to knowingly deliver a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2). Clearly, the evidence was sufficient to support the defendant's convictions for possession of .5 grams or more of cocaine with intent to sell and delivery of less than .5 grams of cocaine under the standard set forth above. The jury believed the witnesses for the State and rejected the testimony of the defendant's witnesses. The defendant is not entitled to relief on this issue.

The defendant was also convicted of possession of drug paraphernalia. A search of the defendant's house revealed a set of digital scales containing cocaine residue. They were located next to the cocaine found in the defendant's bedroom. Tennessee Code Annotated section 39-17-425(a)(1) makes it an offense to possess drug paraphernalia. The evidence was sufficient to support his conviction. The defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE